No. 41,328

MILWAUKEE INSURANCE COMPANY, *Appellant,* v. GAS SERVICE COMPANY, *Appellee.*

(347 P. 2d 394)

Opinion filed December 12, 1959.

*Wm. P. Thompson,* of Wichita, argued the cause, and *A. W. Hershberger, Richard Jones, H. E. Jones, Jerome E. Jones, Robert J. Roth* and *William R. Smith,* all of Wichita, were with him on the briefs for the appellant.

*P. K. Smith* and *F. C. McMaster,* of Wichita, argued the cause, and *William P. Higgins* and *Stanford J. Smith,* both of Wichita, were with them on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was an action by the Milwaukee Insurance Company, plaintiff (appellant), which was subrogated to the rights of its assureds, the McDonalds, to recover from the Gas Service Company, defendant (appellee), one-half the amount paid its assureds for property damage caused by a gas explosion.

Plaintiff's petition, in substance, alleged negligence on the part of defendant gas company in failing and neglecting to bury its gas mains and service lines at a sufficient depth and in failing and neglecting to take prompt corrective action when notified more than one hour before the explosion that gas was escaping from its lines.

Defendant answered by way of a general denial and alleged that the explosion and resultant damage suffered by plaintiff's assureds were caused by the negligence of the Ritchie Brothers Construction Company, and that plaintiff was barred from maintaining the action by virtue of a settlement made with Ritchie Brothers, an alleged joint tort-feasor. Plaintiff replied by way of a general denial.

The pertinent facts follow: Eugene W. and Alma McDonald had insured, with plaintiff insurance company, their home at 7320 East Bayley Street, Wichita, against loss by fire and explosion. Their premises were being served by a gas line constructed by the defendant gas company. On May 10, 1955, the Ritchie Brothers Construction Company was preparing for paving the south half of the 7300 block of East Bayley Street, in which block and on the north side thereof was located the McDonald home. Ritchie Brothers' employees were excavating the street by the use of a dragline, comprising a heavy bucket pulled on a cable by a crane. The south half of the street had to be excavated between four to six feet in this area in order to make it level with the north half, which had been previously paved. About 1:30 p. m., as it was being pulled to the west, the dragline snagged a gas service pipe. The defendant's service pipe lay two or three inches under the pavement of the north half of the street and ran across the street to the

south, rising approximately four to six inches in elevation as it crossed the south half of the street. When the pipe was snagged, approximately six feet of it was exposed and dragged to the west.

Immediately thereafter, Mr. Friend, an employee of Ritchie Brothers, notified the crane operator of the incident and instructed another employee, a truck driver who had a two-way radio in his truck, to notify the defendant gas company that one of its gas lines had been broken. The driver called the Ritchie Brothers' office and reported the broken line to an employee, who promptly called the gas company, notifying them that Ritchie Brothers "had busted into a gas line and that it was flowing pretty bad," and giving them the "exact address on East Bayley." After Mr. Friend reported the snagged line to the truck driver, and at approximately 1:30 p. m., he told Mr. McDonald of the happening and asked him to check for leaks around his house. McDonald checked the pilot lights in the house, but they were burning; there was no smell of gas in the house and things appeared normal. However, there was a strong odor of gas outside the house. At approximately 2:30 p. m. an explosion occurred, which partially destroyed the McDonald home. There was a drain tile running from McDonald's house to the street for the purpose of carrying off excess water. The end of the drain tile was approximately eighteen inches from the break in the gas line located in the street. It was possible that the gas entered this drain pipe and filled the walls and attic of the house.

The fire department arrived on the scene between ten to fifteen minutes after the explosion, at which time the fire chief immediately made an inspection and found gas leaking under the house and into the house. A truck driver for the defendant gas company arrived shortly thereafter and the fire chief said to him, "you better get a truck out here right quick. You are going to have another explosion." The defendant's employee then returned to his truck (it was assumed the truck had a radio), and "approximately fifteen minutes later" an entire gas company crew with all necessary equipment arrived at the scene. Within a few days after the explosion defendant lowered three gas lines in the same block from six inches to three feet.

The plaintiff insurance company, under the terms of its policy, paid $5,026.90 to the McDonalds for repairs to their house and received, in exchange, a subrogation receipt; and on December 13, the following instrument was executed:

"Covenant Not to Sue.

"I, Eugene W. And Alma McDonald of Wichita in the County of Sedgwick and State of Kansas, for our heirs, executors and administrators, in consideration of the sum of Two Thousand Five Hundred Thirteen and 45/100 Dollars to be paid by J. P. Ritchie, H. D. Ritchie and E. D. Ritchie, A Partnership, DBA Ritchie Brothers Construction Company & Lester Baggett, the receipt of which is hereby acknowledged, do by this instrument covenant with said J. P. Ritchie, H. D. Ritchie and E. D. Ritchie, a partnership, dba Ritchie Brothers Construction Company & Lester Baggett, to forever refrain from instituting, pressing or in any way aiding any claim, demand, action or causes of action, for damages, cost, loss of service, expenses or compensation for, on account of, or in any way growing out of, or hereafter to grow out of an accident which happened to Eugene W. and Alma McDonald on or about the 10th day of May, 1955, at or near Wichita, Kansas, whereby Explosion loss to dwelling, and for the above consideration I hereby agree to hold the said J. P. Ritchie, H. D. Ritchie, and E. D. Ritchie, a partnership, dba Ritchie Brothers Construction Company & Lester Baggett, harmless from any damages to myself resulting or to result from said accident."

At the conclusion of plaintiff's evidence, defendant demurred thereto on the grounds that (1) plaintiff failed to make out a *prima facie* case of negligence against the defendant, (2) plaintiff had made a settlement with the joint tort-feasor and was therefore barred from maintaining the action, and (3) under the provisions of G. S. 1949, 55-106 and 55-109, the Ritchie Brothers Construction Company was solely responsible for any loss occasioned by the explosion. From an order of the trial court sustaining the demurrer, plaintiff appeals.

We will first consider whether plaintiff made out a *prima facie* case of negligence against defendant. In so doing, we must recognize certain well-established rules.

Natural gas is a highly dangerous agency and persons engaged in transporting it are held to a high degree of care in laying, inspecting and maintaining their transportation facilities to the end that they may reasonably protect not only the lives and property of their customers but also the lives and property of others in close proximity thereto. (*Sternbock v. Consolidated Gas Utilities Corp.*, 151 Kan. 81, 98 P. 2d 162; *Jelf v. Cottonwood Falls Gas Co.*, 160 Kan. 112, 118, 160 P. 2d 270.)

A gas company having knowledge that gas is escaping in a building occupied by one of its customers is under a duty to shut off the gas supply until necessary repairs have been made or to remedy the defect itself as quickly as is practicably possible. (38 C. J. S. Gas

§ 42 d., p. 738; *Jelf v. Cottonwood Falls Gas Co.,* supra, and cases therein cited.)

On a demurrer to the evidence this court is called upon to review only the sufficiency of plaintiff's evidence and not to weigh the evidence for the purpose of rendering a decision on the merits of the action, and *this same duty is incumbent upon the trial court.* In testing the sufficiency of evidence as against a demurrer, the court shall consider all of plaintiff's evidence as true, shall consider that favorable to plaintiff, together with all reasonable inferences to be drawn therefrom, and shall disregard that unfavorable to plaintiff, and shall not weigh any part that is contradictory nor weigh any difference between his direct and cross-examination, and shall give the evidence of plaintiff a liberal construction resolving all doubt against defendant, and if, so considered, there is any evidence which supports or tends to support plaintiff's case *on any theory,* the demurrer shall be overruled. A long list of our recent cases strictly adhering to this well-established rule may be found in *Kendrick v. Atchison, T. & S. F. Rld. Co.,* 182 Kan. 249, 256, 257, 320 P. 2d 1061. For our last pronouncement on this subject, see *Drake v. Moore,* 184 Kan. 309, 313, 336 P. 2d 807.

We stated in *Sternbock v. Consolidated Gas Utilities Corp.,* supra, that direct proof of negligence is not essential to recovery, as negligence may be established by circumstantial evidence alone. Where circumstances proved fairly justify the inference of negligence on the part of a transporter of natural gas in laying, inspecting and maintaining its service pipes, the evidence is sufficient to take the case to a jury.

In the instant action the evidence disclosed that the defendant was advised about 1:30 p. m. Ritchie Brothers had broken one of its gas lines in the 7300 block on East Bayley Street and gas "was flowing pretty bad"; that the explosion occurred at 2:30 p. m. and the fire department was on the scene at 2:45 p. m., but defendant's agent did not arrive until ten to fifteen minutes thereafter; that after being advised by the fire chief to get a truck out there "right quick," defendant did so within ten to fifteen minutes.

The court apparently assumed one hour's notice to the defendant gas company that gas was escaping did not give it sufficient time to turn off the gas or fix the line. In this assumption, it was in error. In fact, the court was weighing the evidence and deciding the lawsuit, which it had no right to do. Whether the gas company had

sufficient time or acted as quickly as possible after being notified was a question of fact. The character and extent of proof required by the trial court is only applicable after the case is submitted for final decision upon its merits and not for the court's consideration in ruling on a demurrer to plaintiff's evidence. We are of the opinion that the plaintiff made out a *prima facie* case of negligence on the part of the defendant and the trial court erred in sustaining the demurrer.

Defendant contends that the quoted Covenant Not To Sue must be construed as a release; that Ritchie Brothers Construction Company was a joint tort-feasor, and since the release of one joint tort-feasor releases all, the contract was a bar to plaintiff's action.

Under the facts in the instant case, it is apparent that Ritchie Brothers and defendant were not joint tort-feasors. Assuming Ritchie Brothers was negligent in breaking the gas line and assuming the defendant gas company was guilty of negligence in failing to take corrective measures after being advised gas was escaping from its lines, the act of each was an independent and concurrent or successive act. Between Ritchie Brothers and the defendant gas company there was no concert of action, common design, joint enterprise or other relationship which would make them joint tort-feasors. In no event could the two have acted together or jointly. Where the independent tortious acts of two persons combine to produce an injury indivisible in its nature, either tort-feasor may be held for the entire damage—not because he is responsible for the act of the other, but because his own act is regarded in law as a cause of the injury. In cases of such independent concurring or successive torts, the release of one wrongdoer does not release the other. (*Husky Refining Co. v. Barnes,* 119 F. 2d 715, 716 [Ninth Circuit]; *Young v. Anderson,* 33 Ida. 522, 196 Pac. 193, 50 A. L. R. 1056.)

The reason for the rule which renders the acceptance of satisfaction from one of two or more joint tort-feasors a discharge as to all is that the wrong is single and entire and the injured party is entitled to one and only one satisfaction, no matter how many parties may have joined in the act. When the wrongful act is not done jointly by the persons from whom compensation is sought but is the deed of one or the other and not of both, we are unable to perceive on what principle a settlement with and discharge of one affects the cause of action against the other. Furthermore, the release of one

party jointly liable does not bar an action against the others liable, unless it is a general release without reservation, and in order for a release of one to bar an action against others, the release must be a general one which clearly shows the intention to release all parties. (*Jukes v. North American Van Lines, Inc.*, 181 Kan. 12, 20, 309 P. 2d 692; *Railway Co. v. McWherter*, 59 Kan. 345, 53 Pac. 135; see annotation, 50 A. L. R. 1072, 1081.)

The Covenant Not To Sue here in question does not recite that the consideration was in full settlement of all damages. The evidence discloses the contrary. We are of the opinion the McDonalds intended that the Covenant Not To Sue apply to no other party than the Ritchie Brothers Construction Company (*St. Paul Mercury Indemnity Co. v. United States*, 201 F. 2d 57 [Tenth Circuit]; see annotation, 50 A. L. R. 1072, 1081), and that the trial court erred in its construction of the instrument in question.

Defendant's contention that under G. S. 1949, 55-106 and 55-109 Ritchie Brothers was wholly responsible for the damage sustained is without merit. The mentioned statutes have no application to the facts of this case. There is nothing in these statutes to prevent plaintiff from bringing this action against defendant, providing it was in fact negligent. No further comment need be made.

After a careful review of the record, we are of the opinion that the order of the trial court sustaining defendant's demurrer to plaintiff's evidence should be reversed and the case remanded for a new trial.

It is so ordered.