MAXINE P. REED, *et al.*

*v.*

SMITH LUMBER CO., *etc., et al.*

(No. 14557)

Decided July 15, 1980.

*Preiser & Wilson, Barbara H. Fleisher and John H. Kozak*, for appellants.

*Love, Wise, Robinson & Woodroe and Charles M. Love*, for appellee-Carnegie.

HARSHBARGER, JUSTICE:

This appeal challenges a summary judgment entered by the Circuit Court of Doddridge County. Mr. and Mrs. Reed sued Smith Lumber Company, Carnegie Natural Gas Company, and Amana Refrigeration Company for improper installation, assembly, and inspection of a gas furnace. Mrs. Reed alleged that she suffered severe, permanent injuries to her body and mind caused by gas leakage from the furnace

Carnegie served and filed a "no genuine issue of material fact" motion for summary judgment, Rule 56(b) and (c), R.C.P., relying on the pleadings, depositions, and answers to interrogatories. The Reeds did not respond to the motion by counter-affidavit, motion, or traverse of any kind; and after a hearing, the trial judge granted it.

"As a general proposition, issues of negligence are not ordinarily susceptible to adjudication upon a motion for summary judgment made pursuant to Rule 56 of the West Virginia Rules of Civil Procedure . . . ." *Anderson v. Turner*, 155 W.Va. 283, 184 S.E.2d 304 (1971), Syllabus Point 7. "Questions of negligence, due care, proximate cause and concurrent negligence present issues of fact for jury determination when the evidence . . . is conflicting or where the facts, even though undisputed, are such that reasonable men may draw different conclusions from them." *Hatten v. Mason Realty Company*, 148 W.Va. 380, 135 S.E.2d 236 (1964), Syllabus Point 5.

We have written about the use of products of discovery as bases for summary judgment:

A party may often undertake very little discovery or limit the discovery to certain critical areas with the knowledge that he has the requisite proof available without the necessity of any further discovery. Frequently, discovery depositions of the parties or their key witnesses do not reflect all relevant facts. This is because these depositions are taken by adverse counsel and the deponents do not care to volunteer information and, therefore, they give limited answers to the questions. While discovery procedures are useful to develop the facts of a case, there is no requirement that all facts must be developed through discovery, and certainly no grounds for the assumption that they have been developed by discovery. *Masinter v. WEBCO Co.* ____ W.Va. ____, 262 S.E.2d 433, 436 (1980).

It is improper to pre-try a case on a summary judgment motion. *Masinter v. WEBCO, supra.* And, most pertinent: "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *Aetna Casualty and Surety Company v. Federal Insurance Company,* 148 W.Va. 160, 172, 133 S.E.2d 770, 778 (1963), Syllabus Point 3.

There are material facts at issue here and inquiry about facts is desirable to clarify the law about Carnegie's liability. A Carnegie Gas employee testified by deposition that he went to the Reed home on August 27, 1971, to change meters. At that time, he made a customary inspection to ascertain whether the fire in the furnace was venting properly. He informed Mrs. Reed that the furnace was in backwards, but turned on the gas, and lit the furnace. When called back to correct a problem of oil in the gas lines on March 23, 1973, he noticed that the fire was not vented properly. At that time, Carnegie shut off the gas. There is also testimony from

Mrs. Reed's deposition that when the furnace was lit in 1971, the house filled with smoke. So there were obviously questions of fact about Carnegie's knowledge of a dangerous condition. Then there is the ultimate question about its negligence.

In *Long v. City of Weirton*, 158 W.Va. 741, 214 S.E.2d 832 (1975), Syllabus Point 2, we noted that:

> Appropriate and immediate response to hazards attendant to known gas leaks is a duty of one who is charged with controlling substances of dangerous character; reasonableness of response to such hazards is normally a question for the jury.

The gas company, as a distributor of a dangerous substance, has a duty to the public to exercise care and diligence proportionate to any danger, which is known or should be known to the utility. This duty includes "inspection, oversight and superintendence." *Groff v. Charleston-Dunbar Natural Gas Co.*, 110 W.Va. 54, 156 S.E. 881, 882 (1931).

Other states recognize the dangerous character of natural gas and the correlative duty of utility companies that furnish it: *Hammond v. Nebraska Natural Gas Company*, 204 Neb. 80, 281 N.W.2d 520 (1979); *Denniston v. Skelly Oil Company*, 47 Ill. App. 3d 1054, 6 Ill. Dec. 77, 362 N.E.2d 712 (1977); *Suiter v. The Ohio Valley Gas Company*, 10 Ohio St. 2d 77, 225 N.E.2d 792 (1967); *Wolff v. Buzzards Bay Gas Company*, 353 Mass. 57, 228 N.E.2d 94 (1967); *Brown v. Wisconsin Natural Gas Company*, 59 Wis. 2d 334, 208 N.W.2d 769 (1973); *Firestone v. R. H. Lincoln, Inc.*, 23 Ill. App. 3d 320, 319 N.E.2d 60 (1974); *Brauer v. James J. Igoe & Sons Construction, Inc.*, ____ N.D. ____, 186 N.W.2d 459 (1971); *Haddad v. Louisville Gas & Electric Company*, ____ Ky. ____, 449 S.W.2d 916 (1979); *Watkins v. Beicker*, ____ Tex. ____, 579 S.W.2d 519 (1979); *City of Richmond v. James*, 170 Va. 553, 197 S.E. 416 (1938); *Southern Indiana Gas Company v. Tyner*, 49 Ind. App. 475, 97 N.E. 580 (1912); *Schmeer v. Gaslight Company*, 147 N.Y. 529, 42 N.E. 202 (1895).

In *Bell v. Huntington Development & Gas Company*, 106 W.Va. 155, 145 S.E. 165, 168 (1928), plaintiff sued the public utility after a natural gas explosion at her home. She had called the gas company to check her meter because she believed that her bills were excessive. Employees of the utility repaired her gas meter a few hours before the accident. The Court reasoned:

> This action is based on a charge of negligence, and the ordinary rules governing the proof of negligence obtain here. Wherein lies any act of omission or commission on the part of the gas company, or its employees, which brought about or contributed to this unfortunate accident? We are not pointed thereto, except the plaintiff says that the company, having received notice that gas was leaking in the house, did not use due and reasonable diligence either to repair the leak or cut the gas off from the house, and it is said that whether or not such diligence was used is a jury question. Such is, in fact, a proper matter for jury consideration, if there be evidence tending to show that the gas company knew or ought to have known that there was a gas leak in the house.
>
> . . .
>
> But if the company knows at the time it turns on the gas, or after turning on the gas becomes aware, that there are defects in the pipes, it then becomes its duty to make a proper inspection to ascertain the safety of the pipes before it furnishes, or continues to furnish, gas through them. *Bell v. Huntington Development & Gas Company, supra* 145 S.E., at 167, 168.

¹The pipes about which the Court spoke were owned by the plaintiff, just as the furnace was owned by the Reeds.

In *Haddad v. Louisville Gas & Electric Company*, ____ Ky. ____, 449 S.W.2d 916 (1970), a gas company employee

had been called to plaintiff's residence after being told that two people had been " 'overcome with gas or something' and that [they] had been advised by the doctor to have the house checked." *Id.*, 449 S.W.2d, at 917. The employee's investigation revealed that a gas floor furnace was improperly vented. He warned the residents of the dangerous condition and advised them to have the furnace repaired. Although there were no gas fumes, he expressed his opinion that the furnace might be leaking carbon monoxide. The employee turned the furnace to the "on pilot" position, leaving the gas on. The court ruled that having found the furnace in a highly dangerous condition, the gas company had a duty to "do something protective." Although the company did not have an initial duty to inspect a consumer's appliances, or any duty to serve or police appliances, when it did so and discovered an appliance creating a highly dangerous condition, it should have made necessary repairs or shut off the gas until the consumer made the repairs. *Id.*, 449 S.W.2d, at 918. *See generally, Helm v. Manufacturers' Light & Heat Company*, 86 W.Va. 628, 104 S.E. 59, 61 (1920); *Wood v. Gas Service Co.*, 245 F.2d 653 (8th Cir. 1957); *Milwaukee Ins. Co. v. Gas Service Co.*, 185 Kan. 604, 347 P.2d 394 (1959); *Mississippi Valley Gas Co. v. Goudelock*, 224 Miss. 161, 79 So.2d 718 (1955); *Steele v. Peoples Natural Gas Co.*, 386 Pa. 439, 127 A.2d 96 (1956); *Weber v. Interstate Light & Power Co.*, 268 Wis. 479, 68 N.W.2d 39 (1955); *Hanson v. City Light & Traction Co.*, 238 Mo. App. 182, 178 S.W.2d 804 (1944); *Bell v. Brooklyn Union Gas Co.*, 193 App. Div. 669, 184 N.Y.S. 807 (1920); *Jelf v. Cottonwood Falls Gas Co.*, 162 Kan. 713, 178 P.2d 992 (1947).

It is clear from our precedents and those of other states that if a gas company has notice of defects in gas lines, pipes or customers' appliances, that are dangerous to human health and safety, it has a duty to repair the defects or shut off the gas until repairs are made. *See also*, 26 A.L.R.2d 136 (1952 and later case service), and 72 A.L.R.2d 865 (1960 and later case service). We have not held gas companies stricktly liable.

We also recognize that a gas company is a public utility subject to W. Va. *Code*, 24-3-1, and as such, is required to "perform such service in respect thereto as shall be reasonable, safe and sufficient for the security and convenience of the public."

A jury must determine whether this gas company had notice of a defect and hence a duty to determine the safety of furnishing gas through the furnace; and whether it acted reasonably with respect to that duty.

*Reversed.*