**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 24-1387**

COLUMBIA GAS TRANSMISSION, LLC,

Plaintiff – Appellee,

and

UNITED STATES  FEDERAL ENERGY REGULATORY COMMISSION,

Third Party Defendant – Appellee,

v.

RDFS, LLC, a temporary easement to operate and maintain a natural gas transmission line across 1.46 acres of property in Wetzel County, West Virginia, (Parcel ID No. 2-8-58),

Defendant – Appellant,

and

UNKNOWN PERSONS AND INTERESTED PARTIES,

Defendant.

Appeal from the United States District Court for the Northern District of West Virginia at Wheeling.  John Preston Bailey, District Judge.  (5:23-cv-00364-JPB)

Argued:  May 8, 2025                                  Decided:  July 29, 2025

Before WILKINSON, NIEMEYER and BERNER, Circuit Judges.

Affirmed by published opinion.  Judge Berner wrote the opinion, in which Judge Wilkinson and Judge Niemeyer joined.

———————————

**ARGUED:** Joy Melina Diaz Llaguno, HOOK & HOOK PLLC, Waynesburg, Pennsylvania, for Appellant.  Nicolle Renee Snyder Bagnell, REED SMITH, LLP, Pittsburgh, Pennsylvania. for Appellee.  **ON BRIEF:** Matthew R. Miller, HOOK & HOOK PLLC, Waynesburg, Pennsylvania, for Appellant.  Colin E. Wrabley, Emily A. Davis, REED SMITH LLP, Pittsburgh, Pennsylvania, for Appellee.

———————————

BERNER, Circuit Judge:

Columbia Gas Transmission operates a natural gas pipeline that runs across a parcel of land owned by RDFS, LLC. Columbia possesses an easement to operate and maintain the pipeline on RDFS's parcel. After learning that a coal company was planning to mine beneath the parcel, Columbia sought access to the parcel in order to mitigate potential harm to its pipeline. RDFS denied Columbia access to the parcel.

Columbia brought suit and the district court granted a preliminary injunction allowing Columbia to go forward with its mitigation efforts. We agree that Columbia's easement likely granted it access to the parcel. Accordingly, we affirm the ruling of the district court.

## I. Background

Columbia Gas Transmission (Columbia) owns and operates an underground natural gas pipeline that crosses through Wetzel County, West Virginia. The Federal Energy Regulatory Commission granted Columbia a "Blanket Certificate of Public Convenience and Necessity" allowing it to develop and operate the pipeline. RDFS, LLC's predecessor sold to Columbia's predecessor an easement for the pipeline to cross RDFS's parcel in 1969. The easement provides that Columbia has the right to "operate, maintain, replace, and finally remove" the pipeline "through all that certain tract of land" which makes up the parcel. J.A. 20.

In June 2023, a coal mining company informed Columbia of its plans to conduct underground mining beneath RDFS's parcel. The mining was likely to cause the ground

3

above the area mined, including the area underneath Columbia's natural gas pipeline, to subside as much as four feet. Columbia concluded that it needed to unearth the pipeline and perform significant mitigation work to prevent the pipeline from being damaged by the subsidence. In order to complete the mitigation work before the coal mining company began its operations, Columbia would need to start the mitigation project by March 1, 2024. This start date was also necessary to meet the seasonal deadline for tree-clearing to protect the Indiana bat, an endangered species found in West Virgina.

Columbia approached RDFS to discuss the proposed mitigation work. RDFS contended then, as it does now, that the work exceeded the scope of Columbia's easement. RDFS insisted that Columbia needed to acquire additional access rights to the parcel. Efforts to resolve the dispute reached an impasse.

## II. Procedural History

Facing an impending deadline, Columba sued RDFS to gain access to the parcel. Columbia sought two alternate forms of relief. First, Columbia requested a declaration that the Columbia's easement permits access to the parcel to carry out work necessary to mitigate damage to the pipeline, and an injunction granting such access. In the alternative, Columbia sought an order condemning a temporary easement on the parcel under the Natural Gas Act of 1938, Pub. L. 75-688, 52 Stat. 821. Columbia promptly moved for a preliminary injunction on the basis that the easement allowed it the necessary access, or, in the alternative, for partial summary judgment to condemn a temporary easement.

4

The district court first considered Columbia's motion for a preliminary injunction. In ruling on a motion for a preliminary injunction, a court must consider four factors that the Supreme Court established in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). The *Winter* factors are whether: 1) the party seeking the injunction is likely to succeed on the merits; 2) that party will likely suffer irreparable harm in the absence of preliminary relief; 3) the balance of equities weighs in favor of the party seeking the injunction; and 4) granting a preliminary injunction is in the public's interest. *Id.* at 20.

Applying the first *Winter* factor, the district court concluded that Columbia was likely to succeed on the merits because the mitigation work was consistent with maintaining the pipeline, and the easement granted Columbia the right to "operate, maintain, replace, and finally remove" the pipeline on the entire parcel. Regarding the second *Winter* factor, the district court concluded that Columbia would be irreparably harmed if it was denied access to the parcel because delaying the mitigation efforts could damage the pipeline and lead to serious injury or loss of life. Finally, on the third and fourth *Winter* factors, the district court found that the balance of the equities and public interest favored Columbia because the mitigation could not only prevent damage to the pipeline, it could also prevent harm to those who rely on the natural gas provided by Columbia.

After the district court granted Columbia's motion for a preliminary injunction, it next considered Columbia's motion for partial summary judgment seeking to condemn a temporary easement under the Natural Gas Act. To condemn an easement, Columbia needed to establish: 1) that it holds a certificate of public convenience and necessity; 2) that an easement is necessary to the operation of its pipeline; and 3) that it has been unable

5

to acquire the necessary property interest from the owner. The district court recognized that the first requirement was met because Columbia possesses a certificate of public convenience granted by the Federal Energy Regulatory Commission. The district court next concluded that the second requirement was met because the mitigation efforts were necessary to operate the pipeline. With regard to the third requirement—that Columbia had "been unable to acquire the necessary property interest from the owner"—the district court noted that the parties had reached impasse in their effort to reach an agreement. The district court thus concluded that Columbia met all three requirements for condemnation under the Natural Gas Act.

## III. Analysis

On appeal, RDFS challenges the district court's grant of the preliminary injunction. We review a district court's grant of a preliminary injunction for abuse of discretion. *Direx Israel, Ltd. v. Breakthrough Med. Corp.,* 952 F.2d 802, 814 (4th Cir. 1991). In making this assessment, "we review the district court's factual findings for clear error and review its legal conclusions *de novo.*" *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 188 (4th Cir. 2013) (en banc) (citation omitted).

RDFS's arguments on appeal relate only to the first *Winter* factor—whether Columbia is likely to succeed on the merits of its argument that its easement provides access to the parcel to carry out mitigation work on its natural gas pipeline. RDFS raises two principal arguments. First, RDFS contends that the district court's conclusion that Columbia had been unable to acquire from RDFS the right to conduct mitigation operations

6

on the parcel—the third element of the district court's ruling on Columbia's claim under the Natural Gas Act—constitutes the "law of the case," thereby requiring us to vacate the district court's grant of the preliminary injunction. In the alternative, RDFS argues that Columbia's easement does not grant it access to carry out the mitigation work because the easement is vague and Columbia has maintained only a 50-foot wide easement around the pipeline.

## A.      Law of the Case

We first consider RDFS's argument that the law of the case doctrine controls our review of the order granting Columbia's motion for a preliminary injunction. To be sure, the district court's preliminary finding that Columbia possessed an easement granting it access to the parcel could be read to contradict its later conclusion in granting Columbia's motion for partial summary judgment that Columbia was unable to acquire the necessary right by contract. If Columbia already possessed the necessary property right, then it goes without saying that it was able to acquire that right. Even if we were to read the district court's order on the alternative claims as internally contradictory,[1] the law of the case doctrine would not control our review of the preliminary injunction ruling.

The law of the case doctrine "evolved as a means of guiding" trial courts' discretion to revisit interlocutory orders prior to entry of a final judgment pursuant to Federal Rule of

---

[1] The district court *could* have reasoned in the alternative that, assuming there was no access right through the easement, Columbia was likely to succeed on the merits of its condemnation claim, which made the likelihood of success on the preliminary injunction even stronger. *See Mountain Valley Pipeline*, 918 F.3d at 366 ("Because [the company] had already proved that it had a right to condemn the property at issue, success on the merits was not only probable but guaranteed."). The district court did not do so, however.

7

Civil Procedure 54(b), and to prevent parties from relitigating the same issues. *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003). "As most commonly defined, the doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988). This doctrine is not an "inexorable command," however. *Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 68 (4th Cir. 1988). Instead, the law of the case doctrine is merely "a prudent judicial response to the public policy favoring an end to litigation," and courts may revisit their prior decisions when circumstance so require. *Id.*; *see also Castro v. United States*, 540 U.S. 375, 384 (2003) (explaining that the law of the case doctrine "simply 'expresses' common judicial 'practice'; it does not 'limit' the courts' power." (quoting *Messenger v. Anderson,* 225 U.S. 436, 444 (1912))). This court generally adheres to the law of the case doctrine when reviewing *its own* prior decisions. *See TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009).

The law of the case doctrine does not, and indeed cannot, limit the power of an appellate court to review a lower court decision. *See Castro*, 540 U.S. at 384. A court of appeals can affirm or reverse a district court judgment on any ground supported by the record, including grounds rejected by the district court or that undermine the reasoning of a different ruling by the district court. *See United States v. Flores-Granados*, 783 F.3d 487, 491 (4th Cir. 2015). It is our "ultimate responsibility . . . to reach the correct judgment under law." *Am. Canoe Ass'n*, 326 F.3d at 515.

The district court also did not defy the law of the case when it granted the preliminary injunction. This is because the law of the case doctrine applies only to rulings made at a "*subsequent stage* in the same case." *Christianson*, 486 U.S. at 815–16 (emphasis added). Here, the district court granted the preliminary injunction and the partial summary judgment in the same order. The law of the case doctrine does not apply to simultaneous rulings. *See id*.

RDFS's argument that the partial summary judgment ruling should be considered a final determination that supersedes the district court's preliminary finding similarly fails. A ruling on a motion for partial summary judgment is not a final determination because it is subject to reconsideration under Federal Rule of Civil Procedure 54(b). *Am. Canoe Ass'n*, 326 F.3d at 515.

Having determined that the law of the case doctrine does not require us to conclude that the district court's ruling granting partial summary judgment supplanted its preliminary injunction finding, we now turn to the question of whether the district court abused its discretion when it granted the preliminary injunction.

### B.     Scope of Columbia's Easement

RDFS contends that the district court erred in concluding that Columbia's easement likely grants access to RDFS's parcel to conduct mitigation work. We disagree. Columbia's easement conveys broad authority. It permits Columbia to "operate, *maintain*, replace, and finally remove" its pipeline "through *all* that certain tract of land" which makes up the parcel. J.A. 20 (emphasis added). RDFS does not dispute that the mitigation work is necessary to maintain the pipeline, nor does it dispute that Columbia's easement—by its

9

very terms—provides access to the entirety of RDFS's parcel. RDFS argues instead that, because the easement does not specify the boundaries of Columbia's right of way, the easement is vague and its scope must be limited by extrinsic evidence of Columbia's prior use of the parcel.

Under West Virginia law, where there has been a general grant of an easement or right of way across a parcel—a grant that does not definitively describe the specific location of the easement—the easement holder cannot change the right of way after the location has been established without the consent of the landowner. *Mary Helen Coal Co. v. Hatfield*, 83 S.E. 292, Syll. ¶ 2 (W.Va. 1914). Thus, Columbia may not expand its easement beyond the scope of the initial grant. *See id.*; *Lowe v. Guyan Eagle Coals, Inc.*, 273 S.E.2d 91, 93 (W. Va. 1980) ("[N]o use may be made of a right-of-way, different from that established at the time of its creation so as to burden the servient estate to a greater extent than was contemplated at the time of the grant.").

Here, the scope of Columbia's easement is sufficiently broad to include the mitigation work. The easement expressly provides Columbia the right to access the entire parcel to "operate, maintain, replace, and finally remove" its natural gas pipeline. J.A. 20. Columbia's prior use does not change or diminish the scope of the maintenance right. West Virginia common law makes clear that power companies retain the right, under a general right-of-way easement like the one at issue here, to access land to maintain and repair equipment to the extent necessary for the safe and effective operation of its equipment, in accordance with the original easement. *Kell v. Appalachian Power Co.*, 289 S.E.2d 450, 454 (W. Va. 1982). This right includes actions taken to address "obstructions which pose

10

a danger to, or interfere with the effective operation of, the power company's equipment located upon that land." *Id.*

To be sure, Columbia's right to access the parcel to conduct mitigation is not "*unlimited.*" *Id.* at 454. RDFS retains the right to sue for damages to its property, or to seek other such relief as may be necessary during the mitigation work. West Virginia law makes clear that, in exercising rights under its easement, Columbia "must not inflict unnecessary damage to the land nor may its exercise of its rights unreasonably increase the burden placed on the servient tenement." *Id.* "The right granted is tempered by the purpose to be served by that right." *Id.* at 456.

Columbia possesses the right, pursuant to its easement, to enter RDFS's parcel to mitigate the risk of potential damage to its natural gas pipeline caused by land subsidence. That said, Columbia must take care not to inflict unnecessary damage to the land or to increase the burden placed on RDFS unreasonably.

## IV. Conclusion

Columbia satisfied its burden to show that preliminary injunctive relief was appropriate to allow it to mitigate potential damage to its natural gas pipeline. Having discerned no abuse of discretion, we affirm the ruling of the district court.

*AFFIRMED*

11